UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KEITH L. RICHARDSON                         CIVIL ACTION

VERSUS                                      NO: 12-2802

METROPOLITAN LIFE INSURANCE COMPANY         SECTION: R

**ORDER AND REASONS**

Plaintiff Keith Richardson and defendant Metropolitan Life Insurance Company ("MetLife") have submitted this case for decision on the administrative record.  After reviewing the record, the parties' briefing, and the relevant law, the Court determines that remand to the administrator is necessary. MetLife denied plaintiff's claim on appeal for a different reason than the one articulated in the initial claim denial.  Failure to provide a second level of administrative appeal under these circumstances amounts to a denial of "full and fair review" under 29 U.S.C. § 1133.  The Court remands the case so that plaintiff may administratively appeal MetLife's final denial of his claim. The Court also determines that Richardson is not entitled to an award of attorney's fees at this time.

**I.    BACKGROUND**

Plaintiff Keith Richardson was employed as a plant equipment technician for 35 years with Total Petrochemicals & Refining USA, Inc.  As part of his benefits package, he was enrolled in an

employee welfare benefit plan that included health, life, and disability coverage.[1]  In addition to the $50,000 basic life insurance coverage available through defendant MetLife, plaintiff selected $148,000 in optional supplemental life insurance coverage under the MetLife policy, for which he paid an additional premium.  The policy provides for a "Continuation of Life Insurance Protection" benefit that maintains life insurance coverage under the policy and waives premiums while an insured is disabled.  To qualify, an applicant must be "totally disabled" as defined by the plan:

> **Total Disability** or **Totally Disabled** means that due to an injury or sickness:
> - You are unable to perform the material duties of Your regular job; and
> - You are unable to perform any other job for which You are fit by education, training or experience.[2]

An insured is eligible for the life premium waiver only if his or her total disability continues without interruption for six consecutive months after the insured becomes totally disabled.  This is known as the continuation waiting period.[3]  Within three months of the expiration of the continuation waiting period, the insured must submit proof of disability at the time his or her continuation-eligible life insurance coverage ended

---

[1] R. Doc. 18-2.

[2] *Id.* at 48.

[3] *Id.*

(which is the date on which the insured became totally disabled),
as well as proof that the disability continued without
interruption through the expiration of the six-month waiting
period.[4]   The plan does not specify what type of medical evidence
is required as proof of disability.   The plan reserves to the
claims administrator the right to choose a physician to examine
the applicant to determine if he or she is eligible for the life
premium waiver.[5]

Finally, the plan gives discretionary authority to plan
fiduciaries:

> [T]he Plan administrator and other Plan fiduciaries shall
> have discretionary authority to interpret the terms of the
> Plan and to determine eligibility for and entitlement to
> Plan benefits in accordance with the terms of the Plan.   Any
> interpretation or determination made pursuant to such
> discretionary authority shall be given full force and
> effect, unless it can be shown that the interpretation or
> determination was arbitrary and capricious.[6]

In July 2011, plaintiff filed a claim with MetLife for a
life premium waiver.   He submitted a Group Life Insurance
Statement of Review indicating that his "Date Last Worked" was
December 2010 and that the cause of his disability was a back
injury.[7]   Plaintiff also provided the names and contact

---

[4] *Id.* at 84-86.

[5] *Id.* at 86.

[6] *Id.* at 60.

[7] R. Doc. 18-4 at 7.

3

information of two treating physicians.[8]  Plaintiff's
orthopedist, Dr. Jack Loupe, completed a MetLife Attending
Physician Statement ("APS").  The APS was dated July 5, 2011 and
was submitted along with plaintiff's initial claim.[9]  It reveals
that Dr. Loupe had advised plaintiff to cease working on November
15, 2010 due to lower back pain referred into the right lower
extremity and disc bulges at L5-S1, L4-5 and L3-4.  Dr. Loupe
listed plaintiff's limitations as follows:

- Sit six hours intermittently

- Stand three hours intermittently

- Walk 2-3 hours intermittently

- No climbing, twisting, bending, stooping, reaching
above shoulder level, or operating a motor vehicle

- Lift up to ten pounds occasionally (1-35%)

- Lift over ten pounds never.[10]

The form also contained a question that read "Patient can
work ____ hours per day?"  Dr. Loupe filled in the blank with "8"
but wrote next to the question, "after recovery, not now."[11]  He
also checked two boxes indicating that plaintiff was totally
disabled "for his/her regular occupation" and "for any

---

[8] *Id.*

[9] R. Doc. 18-5 at 75-76.

[10] *Id.*

[11] *Id.* at 76.

occupation."[12]  He further indicated that it was "undetermined"
when plaintiff could return to work.[13]

On July 19, 2011, MetLife denied Mr. Richardson's claim.[14]
After reciting the definition of "total disability," the letter
stated:

> After a thorough review of your file, we have determined
> that you have been released to return to work for 8 hours as
> of July 5, 2011.  Accordingly, your claim does not satisfy
> the Plan definition of disability.  Therefore, we must deny
> your claim.[15]

The letter revealed no other deficiencies in plaintiff's claim.

Plaintiff appealed the decision on July 28, 2011, explaining
that MetLife had misread the APS when it concluded that plaintiff
had been cleared to work.[16]  The appeal letter emphasized that in
the APS, Dr. Loupe had indicated (1) that plaintiff was totally
disabled for any occupation; (2) that it was undetermined when
plaintiff would be able to resume work; and (3) that if plaintiff
does improve, he would be permanently restricted to light to
moderate work.[17]  Plaintiff also attached a copy of Dr. Loupe's

---

[12] *Id.*

[13] *Id.*

[14] *Id.* at 69-70.

[15] *Id.*

[16] *Id.* at 71.

[17] *Id.*

treatment notes from an April 12, 2011 office visit.[18]  The
office visit note ("OVN") described his symptoms and included the
following recommendations:

> The patient should continue to take very good care of his
> back which he has been doing.  He is not able to return
> to work.  He cannot stand for more than 30 minutes at a
> time.  He cannot do any bending and lifting type of
> activities at all.  He is showing some signs of
> improvement but his disability is going to be ongoing for
> an undetermined period of time.  I can see him on an as
> needed basis since I do not have any other treatment to
> recommend.[19]

On August 17, 2011, MetLife wrote to plaintiff requesting
(1) a completed Personal Profile Evaluation ("PPE"), which was
enclosed with the letter, (2) an updated APS from plaintiff's
current treating provider(s), and (3) any other test results, lab
findings, or x rays that would support his claim.[20]  The letter
did not indicate that MetLife was considering upholding the
denial of his claim on a different basis.  Plaintiff completed
the PPE and provided a second APS as requested, but it was
virtually identical to the first, as Dr. Loupe merely underlined
some of his comments from the first APS.[21]  Plaintiff also
provided his results from an MRI performed on November 30, 2010,

---

[18] *Id.* at 77-78.

[19] *Id.*

[20] R. Doc. 18-4 at 11.

[21] *Id.* at 35-39, 20-22.

which was shortly before he stopped working.[22]

On September 19, 2011, plaintiff contacted MetLife and informed an employee that he had been approved for Social Security Disability Insurance ("SSDI").[23]  Plaintiff asked if he should provide MetLife with a copy of the determination, and the employee indicated that "we would not need that."[24]

MetLife sent plaintiff's claim file to nurse consultant Diane Englert for review.  Englert's evaluation, which was made available only to MetLife, acknowledged that the initial denial of plaintiff's claim was in error.  She indicated that Dr. Loupe had not actually cleared plaintiff to work eight hours per day.[25] After reviewing plaintiff's APS, PPE, OVN and MRI results, however, Englert drafted a "denial summary" in which she concluded that there was a second, unrelated basis for denying plaintiff's claim:

> Your appeal letter of July 28, 2011 states Dr Loupe writing 8 hours of work ability on the Attending Physician Statement was only after you had recovered, which is indeed correct.  However, there is still a lack of objective clinical evidence of a severity of functional limitations related to your back that would prevent you from all work activities.  Dr Loupe also recorded on the Attending Physician Statements of July 28 and August 26, 2011 that you would have permanent restrictions to doing light to

---

[22] *Id.* at 23.

[23] R. Doc. 18-3 at 9-10.

[24] *Id.*

[25] R. Doc. 18-5 at 79.

moderate work activities, which does not preclude all work.
In addition there is no information related to your
recovery, as there is only one office note from April 12,
2011.  On that day your exam showed you had no limitations
in range of motion in your back, no abnormal neurological
findings except one that had been present for 20 years, and
the only abnormality was a 40% weakness in your right foot.
There was no evidence that meets the criteria to support a
severity of functional impairment precluding all work as
would be evidenced by measured deficits in your ability to
sit, stand and walk, physical examination findings for the
presence of severely limited range of motion to your spine,
significant and persistent muscle weakness and/or muscle
atrophy to your extremities, sensory deficits, and/or
abnormal gait pattern, or the need for use of an assistive
device for ambulation.  There is also no information on
your recovery or response to treatment over time, or that
you were pursuing active treatment towards a recovery, such
as physical therapy, further spinal injections, or possible
surgery.  The lumbar MRI done on November 29, 2010 showed
degenerative changes and some bulging discs, but as this
was done when you were still working, it is unclear what
occurred to cause you to go out of work as of January 3,
2011.

We acknowledge that you may be unable to return to work to
your prior occupation which may entail more strenuous
physical duties, however taking into consideration the
definition of disability that requires that you be unable
to perform any occupation, as well as the limited medical
information submitted, we have determined that you do not
meet the definition of disability as defined by the plan.

Therefore, after reviewing everything in your file, we
uphold our original decision that the information is does
[sic] not adequately support a severity of functional
impairment that would preclude your ability to return to
work as defined by the plan.[26]

On September 28, 2011, MetLife sent Dr. Loupe a copy of

Nurse Englert's evaluation along with a request for his comments,

"specifically addressing but not limited to, [plaintiff's]

---

[26] *Id.* at 80-81.

impairments, restrictions, and/or limitations."[27]  It instructed Dr. Loupe to provide clinical evidence in support of his conclusions if he disagreed with the evaluation and set a deadline of October, 12, 2011 for any response.[28]

MetLife notified plaintiff that it had sent its review to Dr. Loupe "so that he may review and comment," but it did not specify the position MetLife proposed to take on the claim.  It stated:

Please be advised that if Dr. Loupe does not respond to our request by October 12, 2011, we will make our determination with the medical information we have on file.  Please contact your physician to ensure they received our report and are aware of the above due date.[29]

When plaintiff asked Dr. Loupe to forward the report to him, Dr. Loupe contacted MetLife to determine whether he had permission to do so.  MetLife granted this request, and plaintiff received a copy of the letter from Dr. Loupe at some point in the last six days before Dr. Loupe's deadline to comment.[30]  Dr. Loupe did not provide MetLife with a response to the letter.

MetLife informed plaintiff of its final decision by letter

---

[27] R. Doc. 18-4 at 48-50.

[28] *Id.*

[29] *Id.* (emphasis in original).

[30] R. Doc. 18-3 at 6.

9

on October 14, 2011.[31]  The letter was substantially identical to the draft sent to Dr. Loupe for comment, and it was the first instance in which MetLife acknowledged to the plaintiff that the initial denial was made in error based on a misreading of the APS.  Nonetheless, MetLife upheld the denial on the new ground articulated by Nurse Englert in the denial summary: that there was "still a lack of objective clinical evidence of a severity of functional limitations related to [plaintiff's] back that would prevent [him] from all work activities."[32]  The letter also informed plaintiff that he had exhausted his administrative remedies under the plan and that no further appeals would be considered.[33]

On April 17, 2012 and May 7, 2012, plaintiff filed complaints with the Louisiana Department of Insurance and the Texas Department of Insurance.[34]  The complaints contained a detailed "Injury Sequence of Events" and an "Application for Premium Life Waiver/Denial - Chronology of Events."[35]  They describe plaintiff's symptoms in greater detail than the information provided to MetLife.  The complaint included copies

---

[31] R. Doc. 18-4 at 53-55.

[32] *Id.* at 54.

[33] *Id.* at 55.

[34] *Id.* at 56-73; R. Doc. 18-5 at 1-81.

[35] *Id.* at 40-41, 60-62; R. Doc. 18-4 at 56-62, 70-73.

of the letters in which plaintiff was approved for both short-
and long-term disability by UNUM, his employer-provided
disability insurance carrier.[36]  Plaintiff indicated in his
complaint letters that he also was including copies of approval
letters for SSDI and for disability insurance through his credit
union's disability insurer, CUNA, but those letters were not made
part of the record before the Court,[37] and MetLife asserts that
it never saw them.  Finally, plaintiff submitted additional OVNs
from November 15, 2010, January 13, 2010, and March 15, 2011 that
he had not provided previously to MetLife and that go into
greater detail regarding plaintiff's symptoms.[38]

        MetLife had a second nurse consultant conduct a "courtesy
review" of the information it already had on file, as well as of
the newly submitted OVNs, all of which predated the April 2011
OVN submitted with his original claim.[39]  The nurse concurred
with the decision MetLife had made on appeal.  She acknowledged
that plaintiff

>   appears to have had an exacerbation of back pain that
>   radiates to the [right lower extremity] at the onset of
>   disability.  However the additional information still does
>   not clarify [plaintiff's] current functional ability and

---

[36] R. Doc. 18-5 at 5-9.

[37] R. Doc. 18-4 at 71.

[38] R. Doc. 18-5 at 43-47.

[39] R. Doc. 18-3 at 3-4.

ongoing response to treatment since April 12, 2011.[40]

MetLife communicated its decision to the Departments of Insurance by letter and took no further action relating to plaintiff's complaint.[41]  Plaintiff filed this suit pursuant to Section 502(a) of ERISA, 29 U.S.C. § 1132(a), on October 17, 2012.[42]  He requests that judgment be entered in his favor: (1) awarding and/or reinstating basic and optional employee life continued protection coverage and premium waiver benefits; (2) declaring that he has a right to future basic and optional employee life and continued protection coverage and premium waiver benefits; (3) reimbursing him for all amounts paid towards his policy premiums that should have been waived; and (4) awarding all attorney's fees, costs, and prejudgment and post-judgment interest until paid.[43]  MetLife removed to federal court

---

[40] *Id.*

[41] R. Doc. 18-4 at 63-64; R. Doc. 18-5 at 63-64.

[42] R. Doc. 1-1.

[43] R. Doc. 19 at 14.  In his complaint, plaintiff also requested "actual damages, all special and general damages contemplated by law, [and] penalties," without specifying what these damages would be.  R. Doc. 1-1 at 8.  He also mentions his alleged entitlement to accidental death and dismemberment coverage in the complaint.  *Id.* at 7.  Plaintiff abandons these additional claims in his trial brief and did not respond to MetLife's argument that he is not entitled to them.  Accordingly, they will not be considered.

on November 20, 2012.[44]  The parties submitted the case on the
administrative record on August 16, 2013.[45]

## II.  LEGAL STANDARD

ERISA does not expressly delineate a standard of review for
actions challenging benefits determinations. Rather, the
appropriate standard has been set forth in case law from the
Supreme Court and the Fifth Circuit and depends upon whether the
district court is asked to review an issue of plan interpretation
or a factual determination by the plan administrator. In
*Firestone Tire & Rubber Co. v. Bruch,* the Supreme Court held that
an administrator's denial of benefits is reviewed *de novo,* unless
the benefit plan gives the administrator "discretionary authority
to determine eligibility for benefits or to construe the terms of
the plan." 489 U.S. 101, 115 (1989). If the plan grants such
discretion, a court will reverse an administrator's decision only
for abuse of that discretion. *See id.*

Regardless of the discretion granted an administrator, the
Fifth Circuit has held that all factual determinations under
ERISA plans are to be reviewed under an abuse of discretion
standard.  *See Meditrust Fin. Servs. Corp. v. The Sterling
Chemicals, Inc.,* 168 F.3d 211, 215 (5th Cir. 1999) (citing *Pierre*

---

[44] R. Doc. 1.

[45] R. Doc. 18; R. Doc. 19; R. Doc. 21; R. Doc. 23.

13

*v. Connecticut Gen. Life Ins. Co.,* 932 F.2d 1552, 1562 (5th Cir. 1991)). *See also Chabert v. Provident Life & Accident Co.,* CIV.A. 94-1185, 1994 WL 374213, at *4-5 (E.D. La. July 11, 1994) (reviewing factual determinations for abuse of discretion even when plan did not confer discretion on administrator).  Here, the plan expressly grants MetLife "discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan."  Accordingly, the abuse of discretion standard applies.

Under the abuse of discretion standard, the Court considers whether the plan administrator's actions were arbitrary and capricious.  *See Meditrust,* 168 F.3d at 215; *Sweatman v. Commercial Union Ins. Co.,* 39 F.3d 594, 601 (5th Cir. 1994) (quoting *Salley v. E.I. DuPont de Nemours & Co.,* 966 F.2d 1011, 1014 (5th Cir. 1992)).  The Court must determine if substantial evidence exists in the record to support the decision.  *See Meditrust,* 168 F.3d at 215.  Substantial evidence "is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Girling Health Care, Inc. v. Shalala,* 85 F.3d 211, 215 (5th Cir. 1996) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)); *accord Rhodes v. Panhandle E. Corp.,* CIV.A. 93-0429, 1993 WL 346188, at *8 (E.D. La. Aug. 31, 1993) (substantial evidence requires more

14

than a scintilla but less than a preponderance) (internal
quotations omitted) (quoting *Sandoval v. Aetna Life and Cas. Ins.
Co.,* 967 F.2d 377, 381 (10th Cir. 1992)).  "[T]he law requires
only that substantial evidence support a plan fiduciary's
decisions, including those to deny or terminate benefits," and it
is irrelevant whether "substantial evidence (or for that matter,
even a preponderance) exists to support the employee's claim of
disability." *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262,
273 (5th Cir. 2005).  The court charged with reviewing the denial
of benefits under an ERISA plan may not substitute its judgment
for that of the plan administrator. *See Rigby v. Bayer Corp.,*
933 F.Supp. 628, 633 (E.D. Tex. 1996) (citing *Denton v. First
Nat'l Bank of Waco,* 765 F.2d 1295 (5th Cir. 1985)). *See also
Pierre,* 932 F.2d at 1559 ("The Courts simply cannot supplant plan
administrators, through de novo review, as resolvers of mundane
and routine fact disputes.") (citation omitted); *Kolodzaike v.
Occidental Chem. Corp.,* 88 F.Supp.2d 745, 749 (S.D. Tex. 2000)
("Just because this court may have conducted the investigation
differently . . . does not mean that the Administrator abused her
discretion.").

Nonetheless, when an entity acts as both the insurer and the
claims administrator, a conflict of interest arises, and a
reviewing court must consider that conflict as a factor in
determining whether the plan administrator has abused its

discretion in denying benefits.  *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008).  The significance of this factor will depend on the circumstances of the particular case.  *Id.*  A reviewing court may give more weight to the conflict of interest "where the circumstances surrounding the plan administrator's decision suggest 'procedural unreasonableness.'"  *Schexnayder v. Hartford Life and Acc. Ins. Co.*, 600 F.3d 465, 469 (5th Cir. 2010) (quoting *Glenn*, 554 U.S. at 118).  This conflict also carries greater importance when the administrator "has a history of biased claims administration."  *Holland v. Int'l Paper Co. Retirement Plan*, 576 F.3d 240 (5th Cir. 2009) (quoting *Glenn*, 554 U.S. at 118).

## III.  DISCUSSION

### A.  Admissibility of Late-Submitted Evidence

A threshold question in this case is whether the Court will consider the evidence plaintiff submitted to the Departments of Insurance that was not made available to MetLife on direct review.  The evidence consists of the three OVNs predating the April 2011 OVN, the CUNA disability insurance approval letters, and plaintiff's self-reported timeline of events.  The Court's review of whether an administrator abused its discretion in making factual determinations is limited to the record evidence before the plan administrator.  *See Vega v. Nat'l Life Ins.*

16

*Serv., Inc.,* 188 F.3d 287, 299 (5th Cir. 1999) (en banc) (collecting cases), *abrogated in part on other grounds by Glenn*, 554 U.S. 105).  In *Vega*, the Fifth Circuit sitting en banc held that "the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it."  *Id.* at 300.  If a claimant submits additional information to the administrator and requests that the administrator reconsider his or her decision, "that additional information should be treated as part of the administrative record."  *Id.*

Recently, the Fifth Circuit has retreated somewhat from this position.  In *Anderson v. Cytec Indus., Inc.*, 619 F.3d 505 (5th Cir. 2010), the Court considered whether to admit information that the plaintiff had mailed to the administrator after his appeal became final.  It observed that

> [s]ubsequent panels of this court and several district courts within the circuit have wrestled with this language from *Vega*, which could be read to allow claimants to add material to the administrative record long after exhausting their final administrative appeal, even without a showing that the evidence was unavailable to them while their administrative appeal was pending or that they made a good-faith effort to discover or submit the information during the administrative process. . . . Indeed, *Vega* could be read to require ERISA administrators to keep the administrative record open, and to continually consider new information submitted by claimants who have already exhausted the administrative appeals process, almost indefinitely.  Such a policy would be a marked change from this court's pre-*Vega* rule, under which the administrative record "consisted of those documents before the administrator at the time the

17

claims decision was made."  It would also make this
circuit's administrative record law more expansive than that
of the rest of the circuits.  *Cf. Majeski v. Metro. Life
Ins. Co.*, 590 F.3d 478, 483 (7th Cir. 2009) (describing *Vega*
as "an outlier whose reasoning does not stand on firm
ground"); *Liston v. Unum Corp. Officer Severance Plan*, 330
F.3d 19, 23 (1st Cir. 2003) (noting that "virtually all of
the circuits" share the view "that the record on review is
limited to the record before the administrator," "with the
possible exception of the Fifth Circuit") (citing, *inter
alia, Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 636-42 (5th
Cir. 1992)).

*Id.* at 516 & n. 9 (internal citations omitted).  Ultimately, the

Court did not decide the question, because the late-submitted

evidence was cumulative and irrelevant to the Court's decision.

*Id*. at 516.  The precise requirements of *Vega* remain uncertain.

*Cf. Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389 (5th

Cir. 2007) (citing *Vega* and holding that affidavits submitted

after a final administrative appeal but more than one year before

the claimant filed her federal suit were properly considered part

of the record), *with Keele v. JP Morgan Chase Long Term

Disability Plan*, 221 F.App'x 316 (5th Cir. 2007) (noting *Vega*'s

departure from precedent and raising without deciding some of the

questions left unanswered by the decision).

     MetLife urges the Court to disregard the additional

information submitted to the Departments of Insurance.  It argues

    that, as a matter of law, the information sent by Plaintiff
    to the Departments of Insurance six months after the claim
    denial was upheld - which was also six months after
    Plaintiff had exhausted his administrative remedies under
    the Plan - should not be considered by this court in
    determining whether MetLife abused its discretion because it

was not considered by the claims administrator in making its determination.

MetLife also points out that plaintiff never submitted this additional evidence to the administrator; rather, the evidence "was sent directly by the Departments [of Insurance] to MetLife for comment."  MetLife conducted the "courtesy review" in order to respond to those requests for comment, not to give plaintiff a second appeal.

Plaintiff does not articulate why the Court should consider this additional evidence; rather, he simply refers to the evidence as though it were already in the record when his administrative appeal became final.  Because MetLife contends that the evidence "was not considered by the claims administrator in making its determination," and more importantly, because the information contained in those documents is irrelevant to the Court's decision, the Court does not consider them.

**B.   Failure to Comply with ERISA Notice Requirements**

MetLife initially denied plaintiff's claim on the sole ground that Dr. Loupe had cleared him to work eight hours per day.  Plaintiff appealed this basis for the denial, and after considering his appeal, MetLife upheld the denial on a different basis: a lack of objective evidence of functional impairment. Because MetLife changed its reasoning for denying the claim, it was required to provide plaintiff with a second opportunity to

19

administratively appeal the denial.  MetLife failed to do so, and the Court remands the case to provide plaintiff with this opportunity.

Upon denying a claim for benefits, Section 503(1) of ERISA requires a plan administrator to provide the claimant with "adequate notice in writing ... setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1).  The claimant must be afforded "a reasonable opportunity . . . for a full and fair review by the appropriate named fiduciary of the decision denying the claim." *Id*. § 1133(2).  ERISA regulations further require that the administrator provide to the claimant a "description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary . . . ." 29 C.F.R. § 2560.503–1(g)(1)(iii).

The procedures actually provided by an administrator in a particular case are evaluated under the substantial compliance standard. *See Robinson v. Aetna Life Ins*. *Co.*, 443 F.3d 389, 392-93 (5th Cir. 2006) (citing *Lacy v. Fulbright & Jaworski*, 405 F.3d 254, 257 (5th Cir.2005)).  "This means that [t]echnical noncompliance with ERISA procedures will be excused so long as the purposes of section 1133 have been fulfilled." *Robinson*, 443 F.3d at 393 (internal quotation marks omitted) (quoting *White v.*

20

*Aetna Life Ins. Co.*, 210 F.3d 412, 414 (D.C. Cir. 2000)).
ERISA regulations state, however, that absent compliance with the
appeals procedures set forth in § 2560.503-1(h), "[t]he claims
procedures of a plan providing disability benefits will not, . .
. be deemed to provide a claimant with a reasonable opportunity
for a full and fair review of a claim and adverse benefit
determination . . . ."  29 C.F.R. § 2560.503-1(h)(4).

In *Robinson*, the Fifth Circuit held that Section 1133
requires an administrator to provide review of the specific
ground for an adverse benefits decision, even if that ground is
first articulated on final appeal.  443 F.3d at 393.  The
plaintiff sought disability benefits after suffering a stroke
that impaired his vision and rendered him incapable of driving,
because his job as sales representative required him to drive
800-1000 miles per week.  *Id.* at 391.  Aetna initially denied the
plaintiff's claim for disability benefits because it determined
that he was able to drive.  *Id.* at 393.  Upon review, Aetna
informed the plaintiff for the first time in its review letter
that it had determined that the position of sales representative
did not require driving, and it indicated to the plaintiff that
he had exhausted his administrative remedies.  *Id.*  The Court
rejected Aetna's argument that because it had reviewed the
ultimate decision that the plaintiff was not disabled, it had
complied with Section 1133:

21

Subsection (1)'s mandate that the claimant be specifically notified of the reasons for an administrator's decision suggests that it is those "specific reasons" rather than the termination of benefits generally that must be reviewed under subsection (2). *See McCartha v. Nat'l City Corp.,* 419 F.3d 437, 446 (6th Cir. 2005) (holding that an administrator failed to substantially comply with section 1133 where the initial notice of termination failed to state one of the grounds on which it ultimately relied). Furthermore, this Court has previously read the two subsections of section 1133 as complementing each other. In *Schadler v. Anthem Life Insurance*, this Court explained that "the requirement that the administrator disclose the basis for its decision is necessary so that beneficiaries can adequately prepare for any further administrative review ...." 147 F.3d 388, 394 (5th Cir. 1998) (internal punctuation omitted). The notice requirements of ERISA help ensure the "meaningful review" contemplated by subsection (2). *Id.* (quoting *Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 689 (7th Cir. 1992)); *see Hackett,* 315 F.3d at 775 (stating that effective review requires "a clear and precise understanding of the grounds for the administrator's position"). Additionally, mandating review of the specific ground for a termination is consistent with our policy of encouraging the parties to make a serious effort to resolve their dispute at the administrator's level before filing suit in district court. *See Vega v. Nat'l Life Ins. Serv., Inc.,* 188 F.3d 287, 300 (5th Cir.1999) (en banc). Thus, Aetna failed to comply with section 1133(2) when it terminated Robinson's benefits without reviewing the specific ground for that decision.

*Id.*

Like the administrator in *Robinson*, MetLife denied plaintiff the opportunity to seek review of the specific ground on which his claim denial was upheld. MetLife's initial denial of plaintiff's claim was based on a misreading of Dr. Loupe's APS, which led MetLife to conclude erroneously that plaintiff had been cleared to return to work for eight hours per day. This was the only reason MetLife gave in denying plaintiff's claim. After plaintiff appealed, MetLife acknowledged that it had misread the

22

APS but decided to uphold its decision on a new, unrelated ground: that plaintiff had failed to provide sufficient objective evidence of his disability.  The final denial letter was the first time MetLife communicated to the plaintiff that the information he submitted did not "adequately support a severity of functional impairment precluding [his] ability to return to work, including alternate, less physical job demands."  Though MetLife faxed the denial summary to Dr. Loupe for comment, it did not provide plaintiff with a copy of those findings.  The letter to plaintiff informed him that MetLife's conclusions were before Dr. Loupe for comment, but it did not reveal what action MetLife planned to take on the appeal, and it did not invite plaintiff to provide his own comments or evidence.  Further, that Dr. Loupe felt the need to ask MetLife's permission before sharing the proposed findings with plaintiff merely highlights the fact that Dr. Loupe was not acting as an agent of the plaintiff.  While Dr. Loupe was authorized to speak to MetLife concerning the plaintiff, he was never authorized to act on plaintiff's behalf with respect to perfecting the claim.  Accordingly, inviting the doctor to comment did not amount to substantial compliance with the requirement that plaintiff be given an opportunity to appeal each basis for the denial.

Because plaintiff was never given an opportunity to perfect

his claim at the administrative level,[46] the Court concludes that
MetLife failed to substantially comply with Section 1133.

Remand to the plan administrator for full and fair review is
usually the appropriate remedy when the administrator fails to
substantially comply with the procedural requirements of ERISA.
*Lafleur v. Louisiana Health Serv. & Indem. Co.*, 563 F.3d 148, 157
(5th Cir. 2009) (collecting cases).  "When the procedural
violations are non-flagrant, remand is typically preferred over a
substantive remedy to which the claimant might not otherwise be
entitled under the terms of the plan."  *Id.* at 157-58.  A court
may, however, find in favor of the plaintiff on the merits "where
the record establishes that the plan administrator's denial of
the claim was an abuse of discretion as a matter of law."  *Id.* at
158 (citing *Gagliano v. Reliance Standard Life Ins. Co.,* 547 F.3d
230, 240 (4th Cir. 2008); *Robinson*, 443 F.3d at 397).  "A remand
for further action is unnecessary only if the evidence clearly
shows that the administrator's actions were arbitrary and
capricious, or the case is so clear cut that it would be

---

[46] MetLife's "courtesy review" of plaintiff's file was, as
MetLife has argued, outside the scope of the administrative
review process.  In any event, there is no evidence that the
courtesy review satisfied any of the procedural requirements for
administrative appeals.  *See* 29 C.F.R. § 2560.503-1(h).
Moreover, MetLife indicates that it never actually saw copies of
plaintiff's SSDI determination or the letters from his credit
union disability insurance provider despite plaintiff's apparent
attempt to include them in his complaints to the insurance
departments.

unreasonable for the plan administrator to deny the application for benefits on any ground." *Id.* (quoting *Caldwell v. Life Ins. Co. of N. Am.,* 287 F.3d 1276, 1289 (10th Cir. 2002) (internal citations and quotation marks omitted)).  If the administrative record reflects a colorable claim for upholding the denial of benefits, remand is generally the appropriate remedy.  *Id.* (citing *Gagliano,* 547 F.3d at 240).  The court must make this determination on a case-by-case basis.  *See Robinson,* 443 F.3d at 397 & n. 5.

Here, it is not clear that the administrator's actions were arbitrary and capricious or that it would have been unreasonable for the administrator to deny plaintiff's claim on any ground. The plan required proof that plaintiff's total disability continued without interruption from the date of onset until the end of the six-month continuation waiting period.  Plaintiff's last OVN was from April 2011, two months before the end of that period.  MetLife requested an updated APS, but Dr. Loupe merely underlined his comments on the first APS from July 2011. Plaintiff did not provide the results of a functional capacity examination or other tests that would confirm his subjective reports of pain or otherwise support the restrictions listed by Dr. Loupe.  There was no evidence that plaintiff was actively pursuing treatment or whether he was continuing to improve over time.  Finally, though perhaps through no fault of the plaintiff,

Dr. Loupe declined MetLife's invitation to comment on its conclusions.  Because it is not clear that MetLife abused its discretion, remand to the administrator is necessary in order to give plaintiff the opportunity to administratively appeal the specific grounds for denial given by MetLife in its final letter to plaintiff.

### C.   Attorney's Fees

ERISA grants the Court discretion to award reasonable attorney's fees and costs to either party.  29 U.S.C. § 1132(g)(1).  The claimant must show some degree of success on the merits before a court may award attorney's fees.  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010).  Once the Court determines that a party is eligible for fees under this standard, it may, but is not required to, consider the following factors: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.  *See Hardt*, 560 U.S. at 256 & n.9;

*LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs, Inc.*, 703 F.3d 835, 847 (5th Cir. 2013) (characterizing the factors as discretionary).

In some cases, a claimant who secures a remand during district court review of an administrator's denial of benefits may be eligible for attorney's fees. *See Huss v. IBM Med. & Dental Plan*, 418 F. App'x 498, 511-12 (7th Cir. 2011) (concluding that plaintiff was eligible for attorney's fees where she "secured a reversal of the administrative denial of benefits, a remand for further proceedings involving a different controlling document, and the imposition of a statutory penalty against the Defendants").[47] It is not settled, however, whether a remand order, without more, is sufficient to render a plaintiff eligible for attorney's fees. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 256 (2010) ("[W]e need not decide today whether a remand order, without more, constitutes "some success on the merits" sufficient to make a party eligible for attorney's fees under § 1132(g)(1)."). Even if plaintiff is eligible for fees in this matter, the five-factor analysis leads the Court to conclude that an award is not warranted. The Court has not

---

[47] Though plaintiff was eligible for fees, the Court expressed doubts as to whether the district court's decision to award them was warranted in light of the defendant's apparent lack of bad faith. The Court vacated the award for reconsideration by the district court in light of the remainder of its holding. *Id*. at 512-13.

expressed an opinion on the merits of plaintiff's substantive claim, and there is no evidence that MetLife acted in bad faith. Plaintiff's claims do not seek to benefit all participants in the plan or to resolve a significant legal question regarding ERISA itself. Accordingly, plaintiff's request for attorney's fees is denied.


**IV.   CONCLUSION**

For the foregoing reasons, the Court REMANDS to the administrator for further proceedings consistent with this opinion. Plaintiff's request for attorney's fees is DENIED.


New Orleans, Louisiana, this __14th__ day of March, 2014.


<u>                                          </u>
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE